UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD PAUL DOWNS,

Petitioner,

v.

CONNIE HORTON,

Respondent.

Case No. 1:20-cv-1180

Honorable Paul L. Maloney

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I. Factual allegations**

Petitioner Ronald Paul Downs is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On November 8, 2017, Petitioner pleaded guilty in the Barry County Circuit Court to operating a motor vehicle while intoxicated, third offense, in violation of Mich. Comp. Laws § 257.625. On January 3, 2018, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to a term of imprisonment of 8 to 25 years.

Petitioner appealed his sentence. Petitioner, with the assistance of counsel, filed an application for leave to appeal in the Michigan Court of Appeals raising one issue: Mr. Downs is entitled to resentencing because the minimum term was unreasonable; it was a violation of Mr. Downs's constitutional right to a proportionate and individualized sentence. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1, PageID.8.) By order entered June 19, 2018, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 1-1, PageID.29.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issue. By order entered November 26, 2019, the Michigan Supreme Court denied leave to appeal. *People v. Downs*, 935 N.W.2d 332 (Mich. 2019).

On August 11, 2020, Petitioner timely filed his first habeas corpus petition raising the same ground for relief he had raised in the Michigan appellate courts plus two new issues that he had not raised in the state courts. *Downs v. Horton*, No. 1:20-cv-983 (W.D. Mich. Oct. 21, 1990). The Court dismissed the petition without prejudice for Petitioner's failure to exhaust state court remedies. The Court advised Petitioner that "should [he] decide not to pursue his unexhausted claims in the state court, he [could] file a new petition raising only exhausted claims

at any time before the expiration of the limitations period." *Id*. at 6. Petitioner filed the instant petition a few weeks later, raising only the claim he had exhausted in the Michigan appellate courts.

Petitioner reports that the trial court made the following statements during sentencing:

> Well, Mr. Downs, you have a history of this over the past 33 years, which includes 8 drunk driving offenses. [ . . . ] A number of those being felonies. Some misdemeanor drunk driving offenses and as I see your criminal history, numerous driving with license suspended, which means you have no license from drinking and driving and you say, "Oh, well, I'm driving anyway." And that's what you do.
>
> You tell -- what you offer to me as well, "I haven't had an accident." Big deal. You're just lucky. [ . . . ] Because you could have killed somebody in your eight drunk drivings and if you got caught eight times, you're driving a whole lot more than the eight times drunk I know that for a fact. [ . . . ]
>
> You're on probation. You pick up another felony drunk driving. I'm looking at your past treatment history because, yes, I will get that and say okay has Mr. Downs even had significant treatment or an opportunity for that. The Court's been working with you since 1984 to address this problem. You have had substantial treatment opportunities. You had K-Pep in August of '03, outpatient with Barry County Substance Abuse 12/09, residential treatment through Michigan Department of Corrections in April of '11, and outpatient treatment in January of 2012. This does indicate that you've successfully completed the boot camp and the drug treatment court program so you've had that too with court supervision. The problem is as soon as you don't have the supervision, you go right back to the same behavior. And in fact that's escalating because now you were on probation, you did have court supervision, and you did the same thing again.
>
> I look at treatment and helping people, but you -- I mean at this point with someone like you, I'm looking solely at protection of the community because you've been given all these opportunities. I can't look at this and say, "Oh, Mr. Downs really hasn't had a chance to address these issues." You have.
>
> You're at point 30, which is almost four times the legal limit when you get pulled over. While your parents have never seen you drunk or drinking sort of concerns me because to me that says you're really good at hiding it. If you had come in here and -- with a fourth or fifth drunk driving and a couple of shots at treatments, I probably would have considered Swift and Sure [probation] for you. But this is your eight[h] go-round. The guidelines in my opinion, which are presumed to be reasonable [and] proportionate, in no way accurately capture the circumstances of your behavior over the past 33 years. Therefore, this Court finds a reasonable proportionate sentence to be a term in the Michigan Department of Corrections of 96 to 300 months.

(Pet., ECF No. 1, PageID.6-7.) Petitioner notes that the trial court's minimum sentence of 96 months far exceeded the minimum guidelines range of 7 to 46 months. (*Id*., PageID.7.)

Petitioner argues that due process requires that punishment be individualized to the particular circumstances of the offense and the offender; and the sentence here was not. Petitioner argues that *United States v. Booker*, 543 U.S. 220 (2005), requires that his minimum sentence be reasonable; and the sentence here was not. Finally, Petitioner argues that his sentence must be proportional under *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990); and the sentence here was not.

**II. AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III. Discussion**

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner attacks his sentences as disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), and unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017). In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of

the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335-37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate. Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts. *Id*.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene on the basis of a perceived error of state law, see *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

Moreover, Petitioner's claims that his term-of-years sentence is unreasonable and disproportionate are not otherwise cognizable as a constitutional challenge. The United States

Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.[1] Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

In addition to his claims that he should be resentenced because his sentence was unreasonable and disproportionate, Petitioner also contends that he should be resentenced because his sentence was not "individualized." Petitioner cites *Williams v. New York*, 337 U.S. 241 (1949) as support for the proposition that "[d]ue process of law requires that punishment be individualized

[1] The maximum penalty, as enhanced under the habitual offender statute, could have been life imprisonment. *See* MCL §§ 257.625, 769.12.

to the particular circumstances of the offense and the offender. *Williams* says nothing of the sort. *Williams* discusses "individualizing sentences" as a "prevalent modern philosophy of penology," not a constitutional mandate. *Id*. at 247. Even the state authority upon which Petitioner relies does not discuss individualized sentencing as a constitutional requirement but as a principle of the modern view of sentencing. *People v. Triplett*, 287 N.W.2d 165, 166-67 (Mich. 1980); *see also People v. McFarlin*, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here, that individualized sentences are not constitutionally required. *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.").[2] The Sixth Circuit has acknowledged that "there is no constitutional right to individualized sentencing in non-capital cases." *United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49 F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*,

[2] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990); *but see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) ("The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise."). Therefore, Petitioner's claim that he was denied an individualized sentence is also not cognizable on habeas review.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying

this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated: December 18, 2020

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge